UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JEROME TOY SINCLAIR,<br><br>　　　　Defendant. | Case No: CR 09-00070 SBA<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Dkt. 95 |

Defendant Jerome Toy Sinclair is charged in a nine-count Superseding Indictment with possession and distribution of crack cocaine ("crack"), among other charges. The instant charges are based on controlled purchases of crack made by a confidential informant from Defendant in early 2008. The parties are presently before the Court on Defendant's Motion to Suppress. Dkt. 95. Defendant seeks to suppress evidence obtained from Defendant's cellular telephone, which was seized from Defendant at the time of his arrest. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion, for the reasons set forth below.

I. <u>BACKGROUND</u>

　A. **CONTROLLED PURCHASES**

In January and February 2008, a confidential informant working with the Federal Bureau of Investigations ("FBI") made two controlled purchases of crack from Defendant. Search Warrant Aff. ("Aff.") ¶ 14-19, Dkt. 95-1. The first transaction took place on

January 27, 2008. At 10:05 a.m. that morning, the informant called Defendant by telephone to discuss the potential purchase of crack. Id. ¶ 10. After three additional telephone conversations with the Defendant, the informant met with Defendant at 1560 Ursla Way, East Palo Alto, California, and paid him $950 in exchange for two ounces of crack. Id. ¶¶ 11-13. All of the telephone calls were initiated by the informant to Defendant using telephone number 650-921-3349 ("SUBJECT MOBILE TELEPHONE"). Id. Each of the conversations were recorded by the FBI. Id. ¶ 10.

The second controlled purchase took place on February 23, 2008. Id. ¶¶ 14-15. At 1:23 p.m. on that date, Defendant contacted the informant about again purchasing a quantity of crack. Id. As before, the conversation was recorded by the FBI, and took place via SUBJECT MOBILE TELEPHONE previously used by Defendant. Id. At 1:36 p.m., the informant met Defendant in a camper van parked at 2568 Emmett Way, East Palo Alto, California. Id. The informant entered the camper van and paid Defendant $1,600 for three ounces of crack, consistent with their telephone discussion a few minutes earlier. Id.

Outside of the two controlled purchases, the FBI recorded four additional conversations between the informant and Defendant. On January 29, 2008, two days after the initial controlled purchase, the informant contacted Defendant about whether he was able to obtain crystal methamphetamine ("methamphetamine") from his supplier. Id. ¶ 16. On March 24, 2008, the informant called Defendant to follow up on their prior conversation regarding the methamphetamine. Id. ¶ 17. During that conversation, Defendant told the informant that he had not yet contacted his suppliers. Id. On March 28, 2008, the informant received a call from Defendant, essentially stating that he still was unable to obtain meth from his supplier, but implied that he would be able to sell him methamphetamine in any event. Id. ¶ 18. The final recorded conversation took place on January 1, 2009, at which time Defendant contacted the informant to ask whether he was interested in the purchase of a .380 mm handgun. Id. ¶ 19. All of the aforementioned conversations were made to and/or from Defendant at the SUBJECT MOBILE TELEPHONE.

B. **PROCEDURAL SUMMARY**

1. **Indictment and Arrest**

On January 21, 2009, the Government filed an Indictment against Defendant, charging him, inter alia, with distribution of crack cocaine. On March 5, 2009, officers with the Menlo Park Police Department arrested Defendant, pursuant to a no-bail federal arrest warrant. At the time of his arrest, the officers seized $2,302 in cash and one Motorola cellular telephone (telephone no. 650-921-3349), i.e., the SUBJECT MOBILE TELEPHONE. Id. ¶ 8. The SUBJECT MOBILE TELEPHONE has since remained in law enforcement custody. Id. ¶ 4.

On May 13, 2010, the Government filed a Superseding Indictment against Defendant, charging him with violations of 21 U.S.C. § 843(b)—Use of a Communications Facility (Telephone) to Facilitate Narcotics Trafficking (Counts One and Three) and 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii)—Distribution of Crack Cocaine (Counts Two, Four and Six); 21 U.S.C. § 860—Distribution and Possession with Intent to Distribute Crack Cocaine within 1,000 Feet of an Elementary School (Count Five and Eight); 21 U.S.C. § 841(a)(1)—Possession with Intent to Distribute Cocaine (Count Seven); and 21 U.S.C. § 860—Possession with Intent to Distribute Cocaine within 1,000 Feet of an Elementary School (Count Nine). Defendant has been detained since his arrest.

2. **Search Warrant**

On October 27, 2011, FBI Special Agent Gregory P. Wuthrich ("SA Wuthrich"), applied for a search warrant to search: "[a] black Motorola cellular telephone Model L7c H/W Rev A, HEX:333CE227, assigned call number 650-921-3349 from MetroPCS (SUBJECT MOBILE TELEPHONE) that was seized following the arrest of JEROME SINCLAIR on March 9, 2009…." Aff. ¶ 4. In his supporting affidavit, SA Wuthrich detailed the series of recorded telephone calls to and from the SUBJECT MOBILE TELEPHONE between Defendant and the confidential informant from January 27, 2008 through January 1, 2009. Aff. ¶¶ 10-19. As noted above, the calls relate to the sale and

potential sale of drugs and a firearm, and resulted in two controlled purchases of crack cocaine from the Defendant. Id. ¶¶ 13, 15.

SA Wuthrich opined, based on his training, experience and consultation with other law enforcement officers, that illegal drug activities, such as those set forth in the affidavit, "are often arranged through the use of communication devices such as cell phones" and that records of those activities, such as text messages, SMS messages, contact lists, recent call activity, photographs, and video recordings, are often maintained on cellular telephones." Id. ¶¶ 1-3, 21. SA Wuthrich further opined that there was probable cause to find that the cellular phone seized from Defendant contained evidence of criminal activity. Id. ¶¶ 22-23, 33.

Defendant now moves to suppress the evidence seized from the SUBJECT MOBILE TELEPHONE on the grounds that (1) SA Wuthrich's affidavit failed to provide sufficient probable cause for the magistrate the conclude that the telephone used to facilitate the crack transactions was the same telephone seized from the Defendant at the time of his arrest, and (2) the information contained in the affidavit was stale. The Government disputes both of Defendant's contentions, and additionally argues that the search was valid under the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984).

## II. **STANDARD OF REVIEW**

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot be admitted as proof against the victim of the search, and therefore must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 485 (1963). The Supreme Court has held that "the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005) (citing Rakas v. United States, 439 U.S. 128 (1978)).

## III. DISCUSSION

### A. PROBABLE CAUSE

Defendant contends that the search warrant lacks sufficient facts to establish probable cause from which the magistrate judge could reasonably conclude that the SUBJECT MOBILE TELEPHONE described in the search warrant was the same telephone seized from Defendant at the time of his arrest. Def.'s Mot. at 3. According to Defendant, the affidavit indicates that telephone number 650-921-3349 was used by Defendant to make and receive calls from the informant, but that no facts are set forth in the affidavit to establish that the telephone seized from Defendant had, in fact, been assigned that specific telephone number. Id. The purported absence of this link, Defendant argues, demonstrates an absence of probable cause. Id. The Court disagrees.

Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "For a finding of probable cause to satisfy this nexus requirement, there must be a *fair probability* both that a crime has been committed and that evidence of its commission will be found in the location to be searched." United States v. Tan Duc Nguyen, -- F.3d --, 2012 WL 974995, at *3 (9th Cir. Mar. 23, 2012) (emphasis added). The probable cause determination for a search warrant is based on the "totality of circumstances" test. United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). "[A] magistrate judge is only required to answer the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place before issuing a search warrant." Id. (internal quotations omitted). The Ninth Circuit has instructed that "the magistrate judge's determination should be paid great deference." Id. (internal quotations omitted).

Here, the affiant provided sufficient information to establish a fair probability that evidence of criminal activity would be found on the cellular telephone seized from the Defendant. In his affidavit, SA Wuthrich provided specific details regarding the informant's numerous conversations with the Defendant using the same telephone number

over a period of months to facilitate the sale of crack, as well as the potential sale of methamphetamine and a firearm. Aff. ¶¶ 10-19. The affidavit further disclosed that at the time of Defendant's arrest, he was found with $2,302 in cash and a cellular telephone. Id. ¶ 9. Notably, SA Wuthrich opined that cellular telephones frequently are used by drug dealers to facilitate drug transactions, and that records of those transactions commonly are stored on their telephones. Aff. ¶ 21a. Based on that information, the magistrate judge could reasonably conclude that there was a fair probability that the telephone seized from Defendant at the time of his arrest would contain evidence relating to his criminal activities, particularly since the telephone was found along with a large sum of cash. See Maryland v. Pringle, 540 U.S. 366, 373 (2003) ("[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing").

The sole case cited by Defendant, United States v. Sartin, 262 F. Supp. 2d 1154, 1156-57 (D. Or. 2003), is distinguishable. In Sartin, the district court ruled that a search of a residence was invalid because the affidavit accompanying the search warrant failed to explain why evidence of criminal activity would likely be found at that particular address. Sartin's analysis, however, is of limited probative value given that the requirements of the Fourth Amendment are the most demanding when the search involves a home. See United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001) ("Nowhere is the protective force of the fourth amendment more powerful than it is when the sanctity of the home is involved.") (internal quotations omitted). In addition, the fact that SA Wuthrich did not provide specific facts showing that the cellular telephone seized from Defendant had the same telephone number previously used by Defendant to communicate with the informant is inapt. The affidavit clearly showed that Defendant had a demonstrated pattern of using cellular telephones to facilitate his drug trafficking activities, that drug dealers commonly use cellular telephones to transact business, and that evidence of those activities are typically stored on the telephone. Given that showing, the magistrate judge could reasonably conclude that there was a fair probability that the telephone seized from the

Defendant was the same telephone he used to communicate with the informant. See Tan Duc Nguyen, 2012 WL 974995, at *3.

**B. STALENESS**

Alternatively, Defendant contends that the information contained in the affidavit is too stale to establish probable cause on the ground that the incriminating telephone calls preceding the controlled purchases of crack took place more than a year before his arrest. Def.'s Mot. at 3-4. He also attempts to make much of the fact that there was an approximately nine month gap in communications between March 28, 2008 and January 1, 2009 involving use of the SUBJECT MOBILE TELEPHONE, and that the last two conversations never materialized in an actual transaction. These contentions are uncompelling.

"The mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988). "The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." United States v. Gann, 732 F.2d 714, 722 (9th Cir. 1984). Staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and the property sought." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993). "With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity." United States v. Angulo-Lopez, 791 F.2d 1394 (9th Cir. 1986). Indeed, the Ninth Circuit "has concluded that in cases involving ongoing narcotics businesses, lapses of several months—and up to two years in certain circumstances—are not sufficient to render the information in an affidavit too stale to support probable cause." United States v. Fernandez, 388 F.3d 1199, 1254 (9th Cir. 2004); Pitts, 6 F.3d at 1369-70 (holding that four-month lapse after the crack sale did not render information stale where affidavit supported inference that defendant was "more than a one-time drug seller").

Here, the nine month gap in communications between March 28, 2008 and January 1, 2009 does not render the information of Defendant's illicit activities stale. As detailed in SA Wuthrich's affidavit, Defendant consistently used the SUBJECT MOBILE TELEPHONE to set up and consummate the sale of crack and potential future sales of methamphetamine and a firearm to the informant. Aff. ¶¶ 10-19. The last such recorded call—*which was initiated by Defendant*—took place on January 1, 2009, only two months before his arrest on March 5, 2009. Given Defendant's ongoing and consistent use of the same telephone to conduct his illicit and potentially illicit activities, it was clear that Defendant was not a "one-time" drug seller. See Pitts, 6 F.3d at 1369-70. In addition, the magistrate judge could properly find probable cause, notwithstanding the lapse of time since the last drug transaction, based on the agent's opinion that the evidence of criminal activity would likely be found stored on the SUBJECT MOBILE TELEPHONE. See Fernandez, 388 F.3d at 1253 ("[A] magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.") (internal quotations omitted).[1]

Finally, Defendant's reliance on United States v. Greathouse, 297 F. Supp. 2d 1264 (D. Or. 2003) is misplaced. In that case, the showing of probable cause presented in the affiant's October 2001 search warrant application was based entirely on a single tip from German police in September 2000 that a user named "cyotee" was offering Internet access to files containing child pornography. The district court ruled that the tip was stale because there was no evidence any ongoing criminal activity involving the defendant or the use of the name "cyotee" during the yearlong time period leading to the issuance of the warrant. Id. In contrast, the Affidavit proffered by SA Wuthrich in this case set forth numerous instances in which the Defendant used a cellular telephone to conduct and facilitate illegal conduct activities. The initial calls took place between January and March 2008, and

---

[1] The fact that the January 1, 2009 conversation concerned the sale of a firearm as opposed to illegal drugs is of little moment. "Old" information need not be considered stale where the affidavit provides more recent information to "update" the older information. See Fernandez, 388 F.3d at 1254 n.38.

continued to January 2009.  Though there was a gap in the calls between March 2008 and January 2009, such gap does not render the information stale given the ongoing nature of Defendant's illicit activities.

### C. GOOD FAITH EXCEPTION

Even if the search warrant were invalid, the Government's search of the SUBJECT MOBILE TELEPHONE was permissible under the "good faith" exception recognized in Leon.  In Leon, the Supreme Court held that evidence seized by police officers acting in good faith pursuant to a facially valid warrant would be admissible even though the warrant was subsequently found to lack probable cause.  Id. at 926; accord Pearson v. Callahan, 555 U.S. 223, 241-42 (2009).  Leon articulates four circumstances in which the good faith exception does not apply on the ground that reliance is per se unreasonable:

> (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith.

United States v. Crews, 502 F.3d 1130, 1136 (9th Cir. 2007) (citing Leon, 468 U.S. at 923-26).

Defendant does not contend that the affiant misled the magistrate judge, that the magistrate "rubber stamped" the warrant or that the warrant was facially deficient with respect to the place to be searched.  Rather, he argues that it was objectively unreasonable for a law enforcement officer to rely on the warrant ostensibly because there was no factual nexus between the cellular telephone used by Defendant to communicate with the informant and the telephone later seized from him.  As discussed above, however, the affidavit provides more than sufficient information to establish this linkage.  Thus, for the reasons outlined above, the Court concludes that objectively reasonable law enforcement

officers would find probable cause to believe that the cellular telephone seized from Defendant at the time of his arrested would contain evidence relating to criminal activity.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's motion to suppress evidence is DENIED.

IT IS SO ORDERED.

Dated: May 3, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge